UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRADLEY CHAPMAN, | Case No. 3:13-CV-01299-HA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

HAGGERTY, District Judge:

Plaintiff Bradley Chapman seeks judicial review of a final decision by the Acting

Commissioner of the Social Security Administration denying his applications for Disability

Insurance Benefits (DIB) Supplemental Security Income (SSI) benefits.  This court has

jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).  After

reviewing the record, this court concludes that the Acting Commissioner's decision must be

reversed and remanded for further proceedings.

OPINION AND ORDER - 1

## STANDARDS

A claimant is considered "disabled" under the Social Security Act if: (1) he or she is unable to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue*, 688 F.3d 1144, 1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the Commissioner must determine whether the claimant (1) has not engaged in SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental impairments; (3) has severe impairments that meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a residual functional capacity (RFC) that prevents the claimant from performing his or her past relevant work. *Id.* An RFC is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p. The claimant bears the burden of proof in the first four steps to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist

OPINION AND ORDER - 2

in a significant number in the national economy that the claimant can perform given his or her

RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of

awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). On the other hand, if the

Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of

determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards

and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. §

405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.

Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it

supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The

Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the

Commissioner's decision must be upheld in instances where the evidence supports either

outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the

Commissioner did not apply the proper legal standards in weighing the evidence and making the

decision, the decision must be set aside. *Id.* at 720.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born in 1968 and was forty years old at the time of the alleged onset date.

Plaintiff attended school until the ninth grade and earned a General Education Development

OPINION AND ORDER - 3

(GED) degree as an adult. He also attended beauty school through vocational rehabilitation services. He has past working experience as a carnival ride operator, parking lot attendant, and hair stylist. Plaintiff protectively filed his applications for benefits on January 8, 2010, alleging that he has been disabled since April 30, 2006. The claim was denied initially and upon reconsideration. At plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on September 12, 2011. The ALJ heard testimony from plaintiff, who was represented by counsel, as well as an independent vocational expert (VE).

On December 8, 2011, the ALJ issued a decision finding that plaintiff was not disabled under the Social Security Act. At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in SGA since April 30, 2006, his alleged onset date. Tr. 21.[1] At step two, the ALJ found that plaintiff suffers from the following medically determinable severe impairments: degenerative disc disease, hypertension, obesity, diabetes, status post myocardial infarction, learning disorder, posttraumatic stress disorder, depression, panic disorder and obsessive compulsive disorder. Tr. 21. After considering plaintiff's severe and non-severe impairments, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22. After considering the entire record, the ALJ found that plaintiff has the RFC to lift and carry up to twenty-five pounds frequently and fifty pounds occasionally. He can sit for two-hour increments for a total of eight hours a day. He can stand or walk for two-hour increments for a total of eight hours a day. He can occasionally climb stairs and ramps. He cannot climb ladders,

---

[1] "Tr." refers to the Transcript of the Administrative Record.

OPINION AND ORDER - 4

ropes, or scaffolds. He can occasionally kneel, crouch, and crawl. He should do no overhead

reaching with the right upper extremity. He should not work in an environment that requires

public contact. He can work in close proximity with coworkers but would work best in an

environment that involves no tandem tasks or teamwork. He would need to have instructions

given verbally or by demonstration versus written instructions. He would be able to remember,

understand, and carry out simply and detailed, but not complex, tasks or instructions typical of

occupations with an special vocational preparation (SVP) of one or two. Tr. 23. Based on

plaintiff's age, RFC, education, work experience, and testimony from the VE, the ALJ

determined that plaintiff is able to perform work existing in significant numbers in the national

economy, such as cafeteria attendant and housekeeping cleaner. Tr. 28. Therefore, the ALJ

concluded that plaintiff is not disabled. Tr. 28.

On June 4, 2013, the Appeals Council denied plaintiff's request for review, making the

ALJ's decision the final decision of the Acting Commissioner. Plaintiff subsequently initiated

this action seeking judicial review.

**DISCUSSION**

Plaintiff argues that the final decision of the Acting Commissioner is not supported by

substantial evidence and is not based on the application of proper legal standards for the

following reasons: (1) the ALJ erred by improperly rejecting the opinions of plaintiff's treatment

providers; (2) the ALJ erred by improperly rejecting the opinions of the consultive mental health

examiners; and (3) the ALJ erred at step five of the sequential analysis. The court will address

each of plaintiff's arguments in turn.

///

OPINION AND ORDER - 5

(1)    **Opinions of Plaintiff's Treatment Providers**

Plaintiff argues that the ALJ erred in improperly rejecting the opinions of several nurses

and social workers who treated plaintiff's mental health issues.  Specifically, plaintiff challenges

the ALJ's analysis of the opinions of Sheryl Hedges, PMHNP; Ceara Carder, LCSW, and Teresa

Everson, M.D.; Katie Kern, PMHNP; and Nina O'Mailia, PA-C.

a.    Sheryl Hedges, PMHNP

Plaintiff argues that the ALJ did not apply the proper legal standards in analyzing the

opinion of Sheryl Hedges, a Psychiatric Mental Health Nurse Practitioner.  In a letter to the

Social Security Administration dated March 23, 2011, Hedges opined that although plaintiff's

symptoms have reduced by forty percent since starting mental health therapies, he is still unable

to work.  Tr. 348.

Plaintiff concedes that Hedges is not an "acceptable medical source" under 20 C.F.R. §

404.1513(a) and 20 C.F.R. § 416.913(a).  However, plaintiff argues that Social Security Ruling

(SSR) 06-03p requires an ALJ to evaluate the opinions of "other sources" on key issues such as

impairment severity and functional effects.  According to plaintiff, SSR 06-03p further requires

the ALJ to apply the factors listed in 20 C.F.R. § 416.1527(c) in considering all opinions from

medical sources, regardless of whether they are an "acceptable medical source."  These factors

include the length of time that the source has known and how frequently the source has seen the

individual; how consistent the opinion is with other evidence; the degree to which the source

presents relevant evidence to support an opinion; how well the source explains the opinion; the

specialty of the source; and any other factors that tend to support or refute the opinion.  20 C.F.R.

§ 416.927.  Plaintiff argues that the ALJ erred in rejecting Hedges' opinion without utilizing the

OPINION AND ORDER - 6

required factors.

While it is true that SSR 06-03p requires an ALJ to evaluate the factors of § 416.927, an ALJ's failure to explain the consideration of those factors does not constitute error. In fact, SSR 06-03p explicitly notes that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." Rather than require a specific discussion on each factor in § 416.927, SSR 06-03p merely states that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Accordingly, this court will not require the ALJ to discuss the factors in § 416.927 when analyzing the opinions of "other sources."

Instead, the court will apply the appropriate standard in evaluating an ALJ's rejection of the opinions of "other sources." "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). With respect to Hedges, the ALJ afforded little weight to her opinion that plaintiff is unable to work. Tr. 24. The ALJ reasoned that Hedges supported that opinion with no specific functional limitations. Additionally, the ALJ explained that Hedges' notes, as well as subsequent records, are inconsistent with that opinion, in that they reflect ongoing improvement. Tr. 24. These are reasons germane to Hedges' opinion that plaintiff is unable to work; therefore, the court finds no error.

Plaintiff argues that the ALJ's reasoning for discounting Hedges' opinion are not supported by substantial evidence. Specifically, plaintiff argues that the ALJ improperly found

OPINION AND ORDER - 7

that Hedges' treatment notes were inconsistent with her ultimate opinion because plaintiff

experienced some improvement. As plaintiff highlighted, "cycles of improvement and

debilitating symptoms are a common occurrence." *Garrison v. Colvin*, No. 12-15103, 2014 WL

3397218, *18 (9th Cir. July 14, 2014). "That a person who suffers from severe panic attacks,

anxiety, and depression makes some improvement does not mean that the person's impairments

no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246

F.3d 1195, 1205 (9th Cir. 2001).

   In this case, there exists evidence that plaintiff's mental health symptoms were improving

as the ALJ suggested. Plaintiff directs the court to Hedges' notes on March 4, 2011, in which she

observed plaintiff's rambling speech, intrusive thoughts, teary-eyedness, dysphoria, obsessions,

and compulsive behaviors. Tr. 393. After that date, Hedges' notes demonstrate a marked

decrease in plaintiff's symptoms. For example, on March 23, 2011, plaintiff reported a forty

percent mood improvement, decreased compulsive symptoms, and the ability to sleep through the

night. Tr. 391. Hedges also noted improvements in plaintiff's anxiety and compulsive behaviors.

Tr. 391. Similarly, on April 13, 2011, Hedges noted that plaintiff was only "mildly dysphoric"

and that plaintiff was aware that his symptoms had improved. Tr. 389. By May 25, 2011,

Hedges explained that plaintiff's anxiety was confined to situational anxiety. Tr. 385. On July 1,

2011, plaintiff felt that he was experiencing decreased symptoms as a result of his medication.

Tr. 383. As a whole, the medical record displays constant improvement, rather than cycles of

improvement and debilitating symptoms as plaintiff suggests. Therefore, the ALJ's reason for

discounting Hedges' opinion is supported by substantial evidence.

///

OPINION AND ORDER - 8

b.      Ceara Carder, LCSW, and Teresa Everson, M.D.

Ceara Carder, a clinical social worker, provided mental health counseling to plaintiff

beginning November 10, 2010.  On April 1, 2011, Carder drafted a letter explaining that plaintiff

is unable to support himself due to intrusive thoughts, auditory hallucinations, severe anxiety,

and rage.  Tr. 351.  This letter was signed by Carder as well as Teresa Everson, M.D.  On

September 12, 2011, Carder also completed a disability questionnaire on behalf of plaintiff.  In

that questionnaire, Carder opined that plaintiff has extreme limitations with social functioning,

extreme limitations with concentration, persistence, or pace, and marked limitations with

activities of daily living.  Tr. 423-424.

As explained above, a clinical social worker is not afforded the same weight as an

acceptable medical source.  However, one of Carder's opinions was also signed by Dr. Everson,

an acceptable medical source.  The Ninth Circuit has explained that "[t]o the extent [the] nurse

practitioner was working closely with, and under the supervision of [a physician] her opinion is

to be considered that of an acceptable medical source." *Taylor v. Comm'r of Soc. Sec. Admin.*,

659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.1996)).

Most district courts have interpreted this exception narrowly.  *Davis v. Astrue*, No. 11–cv–1819

PJH, 2012 WL 3011223, at *16 (N.D.Cal. July 23, 2012) ("*Gomez* does not stand for the

proposition that any medical professional, who would not otherwise be considered an 'acceptable

medical source,' is transformed into an 'acceptable medical source' merely because he or she is

supervised to any degree by a physician."); *Garcia v. Astrue*, No. 10–cv–0542 SKO, 2011 WL

3875483, at *13 (E.D.Cal. Sept.1, 2011) ("Only in circumstances that indicate an agency

relationship or close supervision by an 'acceptable medical source' will evidence from an 'other

OPINION AND ORDER - 9

source' be ascribed to the supervising acceptable medical source."). Doctor Everson's signature

on Carder's letter alone does not demonstrate such a relationship. *Ramirez v. Astrue*, 803

F.Supp.2d 1075, 1082 (C.D.Cal. 2011) (physician's signature on client plan prepared by a social

worker did not establish that the social worker worked under the physician's close supervision

while treating claimant or preparing reports, and therefore social worker was not an acceptable

medical source). Plaintiff does not present any other evidence of Dr. Everson's supervision of

Carder. Therefore, this court will analyze Carder's opinion as that of an "other source" and the

ALJ properly rejected Carder's opinions if she presented germane reasons for doing so. *Molina,*

674 F.3d at 1111.

The ALJ rejected Carder's April 1, 2011 opinion, reasoning that Carder had been treating

plaintiff for only five months, but opined that plaintiff was unable to work for the past five or six

years. Additionally, the ALJ reasoned that Carder provided no specific work-related functional

limitations in the letter. Plaintiff argues that these reasons are not supported by substantial

evidence. This court agrees that the fact that Carder opined about plaintiff's conditions over the

past five years does not in any way discredit her opinion as to plaintiff's current limitations.

However, the court disagrees that the ALJ's second reason is not supported by substantial

evidence.

The ALJ may reject an opinion as conclusory if it includes "no specific assessment of [the

claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d

1428, 1432-33 (9th Cir.1995). Likewise, an ALJ may discredit a medical report that does "not

show how [a claimant's] symptoms translate into specific functional deficits which preclude work

activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.1999); *Meanel v.*

OPINION AND ORDER - 10

*Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (ALJ properly rejected a medical opinion that failed to

explain the extent or significance of a condition).  Carder's April 2011 letter simply lists

plaintiff's mental health issues and states his symptoms.  Tr. 351.  The letter does not explain the

extent of those conditions, nor does it explain how those symptoms translate into specific

functional deficits.  Therefore, the ALJ provided a germane reason for discounting Carder's April

2011 opinion and the court finds no error.

The ALJ rejected Carder's September 2011 opinion for two reasons: it was inconsistent

with the treatment record and it was based primarily on plaintiff's self-report.  Plaintiff argues

that these reasons are not supported by substantial evidence.  However, the ALJ provided several

examples from the record that demonstrate the inconsistencies in Carder's opinion.  Tr. 25.

Plaintiff does not challenge most of those examples.  For instance, plaintiff does not challenge

that the medical record is deficient in evidence of plaintiff's anger problems, nor does plaintiff

challenge the fact that plaintiff's ability to perform some work as a hairdresser is inconsistent

with the extreme limitations described by Carder.  Therefore, the ALJ's reasoning is not

unsupported as plaintiff suggests.

Plaintiff also argues that the fact that Carder's September 2011 opinion was based on

plaintiff's self-report is not a valid reason for discounting Carder's opinion, because all mental

health professionals must rely on subjective impairments to some degree.  However, the Ninth

Circuit has held that an ALJ's rejection of a psychologist's opinion because it was based largely

on the plaintiff's self-reporting, which the ALJ found not fully credible, is a specific and

legitimate reason for rejecting that opinion.  *Melton v. Comm'r of Soc. Sec. Admin.*, 442 Fed.

Appx. 339, 341 (9th Cir. 2011).  Plaintiff does not contest that Carder's opinion relied largely on

OPINION AND ORDER - 11

plaintiff's self-report.  Following Ninth Circuit precedent, this court finds that the ALJ's rejection

of Carder's opinion for its reliance on plaintiff's self-report, which was properly found incredible,

is a germane reason.

        c.     Katie Kern, PMHNP

Katie Kern is a Psychiatric Mental Health Nurse Practitioner who wrote an opinion letter

on June 28, 2011.  Kern's letter explained that plaintiff suffers from severe and complex PTSD,

and his symptoms include avoidance, isolation, flashbacks, severe anxiety, periods of rage,

difficulty with concentration, low energy, and nightmares.  Tr. 355.  Kerns concluded that these

symptoms make it impossible for plaintiff to perform job-related functions.  Tr. 355.

The ALJ afforded little weight to Kern's opinion because it is not consistent with her

treatment notes and she provided no specific functional limitations.  Plaintiff argues that these

reasons are not supported by substantial evidence.  However, as discussed above in relation to the

opinion of Carder, an ALJ may discredit a medical report that does not show how symptoms

translate into specific functional deficits that preclude work.  *Morgan*, 169 F.3d at 601.  Kern

merely lists plaintiff's symptoms and concludes that those symptoms will prevent plaintiff from

performing job-related functions.  She fails to explain with any specificity how those symptoms

will affect specific functioning.  Therefore, the ALJ provided a germane reason supported by

substantial evidence for discounting Kern's opinion.  Because the court has determined that the

ALJ provided one germane reason, it need not address the ALJ's additional reasoning.

        d.     Nina O'Mailia, PA-C

Nina O'Malia is a certified physician assistant who treated plaintiff in 2011.  On May 24,

2011, O'Mailia drafted an opinion letter regarding plaintiff's physical and mental impairments.  In

OPINION AND ORDER - 12

the letter, O'Mailia explained that plaintiff suffered a heart attack in September 2010 and continues to have coronary artery disease. Tr. 354. She noted that he has Diabetes Mellitus and Diabetic Neuopathy in his feet, which causes him pain. Tr. 354. She noted that he also suffers from chronic pain and arthritis in his wrists, low back pain, an eating disorder, obesity, social anxiety, and PTSD. O'Mailia concluded, without any additional explanation or analysis, that plaintiff cannot obtain full-time employment due to his physical and mental impairments. Tr. 354

The ALJ afforded little weight to O'Mailia's opinion because she provided no work-related functional limitations. Tr. 26. Plaintiff disagrees, arguing that O'Mailia described the basis for plaintiff's chronic pain and fatigue. As explained above, an ALJ may discredit an opinion that fails to show how symptoms translate into specific functional deficits. *Morgan*, 169 F.3d at 601. Even if O'Mailia's opinion described the basis for plaintiff's chronic pain and fatigue, it failed to address the severity of those symptoms or explain how those symptoms affect specific functioning. Therefore, the court finds no error in the ALJ's analysis of O'Mailia's opinion.

### 2.    Opinions of Consultive Mental Health Examiners

Plaintiff contends that the ALJ erred by improperly rejecting the opinions of two consultive examiners: (a) Steven Barry, Ph.D., and (b) Zachary Steinberg, M.D.

#### a.    Doctor Steven Barry

Doctor Barry interviewed plaintiff and performed multiple tests on July 22, 2004. Doctor Barry opined that plaintiff had great difficulty reading and he estimated that plaintiff's reading speed would place him in the bottom one percentile of individuals that he has evaluated. Doctor

OPINION AND ORDER - 13

Barry noted that plaintiff is an "extremely inaccurate listener," has difficulty sitting still, and "his persistence of pace during the testing was inadequate." Tr. 323.

Without referring to Dr. Barry by name, the ALJ summarized his findings related to plaintiff's reading impairments. Tr. 24. The parties agree that the ALJ adequately addressed these reading impairments by establishing a limitation on written instructions in plaintiff's RFC. Tr. 23.

However, plaintiff argues that the ALJ failed to address Dr. Barry's opinion as it relates to plaintiff's limitations in concentration, persistence, and pace. Defendant argues that plaintiff's problems with concentration, persistence, and pace were related solely to his reading impairments, and the ALJ accounted for this impairment by limiting instructions to verbal and demonstrative instructions. However, the court reads Dr. Barry's opinion more broadly. While Dr. Barry focuses on plaintiff's reading impairments in the portions of his opinion that defendant cites, Dr. Barry's conclusion is more general. *Compare* Tr. 319 *with* Tr. 323. In his conclusion, Dr. Barry opines that "[plaintiff's] persistence of pace during testing was inadequate." Tr. 323. Doctor Barry does not limit his conclusion to plaintiff's reading capabilities; therefore, the limitation regarding verbal and demonstrative instruction in the RFC does not fully address all of the limitations in Dr. Barry's opinion.

In the alternative, defendant argues that any limitation with concentration, persistence, or pace was addressed by the RFC's limitation to simple tasks, typical of occupations with an SVP of one or two. However, the court is persuaded by plaintiff's citation to *Abrego v. Comm'r of Soc. Sec. Admin.*, No. 99-6173-JO, 2000 WL 682671 (D.Or. May 25, 2000). In *Abrego*, the hypothetical posed by the ALJ failed to fully and accurately state the plaintiff's deficiencies in

OPINION AND ORDER - 14

concentration, persistence, or pace. *Id.* at *3. Based on the hypothetical, the VE concluded that

the plaintiff was able to perform certain unskilled jobs. Relying on a decision from the Eighth

Circuit, this court held that, even though the plaintiff was limited to simple jobs, the ALJ erred

by failing to include the deficiencies in the hypothetical. *Id.* (citing *Newton v. Chater*, 92 F.3d

688, 695 (8th Cir. 1996)). The court reasoned that the VE's testimony may have been different if

the hypothetical included all of the plaintiff's limitations. *Id.* In this case, the ALJ's hypothetical

contained no limitation on plaintiff's concentration, persistence, or pace. Tr. 62. By failing to

include all of plaintiff's limitations in the hypothetical, the ALJ discounted a portion of Dr.

Barry's opinion without providing specific, legitimate reasons, which are necessary to reject the

opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). On

remand, the ALJ must properly evaluate Dr. Barry's opinion and provide the VE with a

hypothetical that includes all of plaintiff's limitations that are supported by the medical record.

    b.  Doctor Zachary Steinberg

  Plaintiff argues that the ALJ erred in her analysis of Dr. Steinberg's opinion. Doctor

Steinberg evaluated plaintiff on February 11, 2010. In his examination, he noted that plaintiff

had a positive straight leg test, significant osteoarthritis of the hips, knees, and fingers. Tr. 346.

Among other things, Dr. Steinberg opined that plaintiff's impairments prevented him from

walking and standing more than two hours in a day. Tr. 346.

  The ALJ afforded Dr. Steinberg's opinion significant weight and she adopted several of

the limitations that he noted, such as plaintiff's maximum lifting or carrying capacity. Tr. 23, 26.

However, the ALJ afforded little weight to Dr. Steinberg's walking limitations and fingering

limitations. Tr. 26. The ALJ concluded that, despite Dr. Steinberg's opinion, plaintiff can walk

OPINION AND ORDER - 15

eight hours with a break every two hours, and plaintiff required no fingering limitations. Tr. 26.

An ALJ may not reject an examining physician's opinion unless he makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Lester*, 81 F.3d at 834. Here, the ALJ discounted Dr. Steinberg's walking limitation because subsequent knee x-rays were normal and lumbar spine x-rays demonstrated only mild degeneration. Tr. 26. However, Dr. Steinberg found that plaintiff's most prominent osteoarthritis was located in his right hip - not his knees or lumbar spine. Tr. 346. Therefore, Dr. Steinberg's opinion was not at odds with the medical evidence, as defendant suggests. The ALJ's reasoning fails to otherwise address plaintiff's osteoarthritis in his hip; therefore, the ALJ did not provide a legitimate reason for discounting the walking limitation. The ALJ shall address Dr. Steinberg's opinion and plaintiff's osteoarthritis on remand.

### 3. Step 5 Analysis

Plaintiff argues that, at Step 5 of the sequential analysis, the ALJ provided the VE with a hypothetical that failed to include all of plaintiff's limitations. In support, plaintiff reiterates that the ALJ ignored the opinions of plaintiff's treating practitioners and examining physicians in establishing the hypothetical.

If the assumptions in the hypothetical are not supported by the record, "the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456-57 (9th Cir. 1984). As discussed above, the ALJ's hypothetical contained no limitation on plaintiff's concentration, persistence, or pace despite the opinion of Dr. Barry, which was not properly discounted. Tr. 62. Similarly, because the ALJ failed to provide specific reasons in discounting Dr. Steinberg's opinion regarding plaintiff's

OPINION AND ORDER - 16

osteoarthritis, her hypothetical regarding plaintiff's standing limitations was not supported by the

medical record. Accordingly, the VE's testimony did not benefit from a complete understanding

of plaintiff's limitations and has no evidentiary value. Therefore, the ALJ is required on remand

to present the VE with a hypothetical that includes all of plaintiff's limitations that are supported

by the record.

## CONCLUSION

For the reasons provided, this court concludes that pursuant to sentence four of 42 U.S.C.

§ 405(g), the decision of the Acting Commissioner denying Bradley Chapman's applications for

DIB and SSI must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS

consistent with this ruling and the parameters provided herein.

IT IS SO ORDERED.

DATED this _10_ day of September, 2014.

Ancer L. Haggerty
United States District Judge

OPINION AND ORDER - 17